**This order is SIGNED.**

Dated: August 5, 2016



**WILLIAM T. THURMAN
U.S. Bankruptcy Judge**



*mpw*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Robert James Long,<br><br>Debtor. | Bankruptcy Number 11-33127<br><br>Chapter 7 |
| Jeffrey Phillips and 7864 Astero Lane, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Robert James Long,<br><br>Defendant. | Adversary Proceeding No. 13-02047<br><br>Judge William T. Thurman |

## MEMORANDUM DECISION

The matter before the Court is the Defendant's motion to dismiss this adversary

proceeding for lack of subject matter jurisdiction. The Defendant, Robert Long, filed a chapter 7

bankruptcy petition on September 8, 2011. His discharge was entered on December 14, 2011. This adversary proceeding was filed by the Plaintiff, Jeffrey Phillips, on February 11, 2013.

The complaint brought eight counts against the Defendant. Three of the counts were nondischargeability claims under 11 U.S.C. § 523(a).[1] Three other counts were brought under § 727(a), but were labeled revocation of discharge rather than denial of discharge. This case was scheduled for a hearing on a motion for summary judgment on May 26, 2016. At that hearing, Defendant raised the question of the Court's subject matter jurisdiction. The parties briefed the issue of subject matter jurisdiction and presented oral argument. After considering the arguments of counsel, and conducting an independent review of the law, the Court makes the following findings of fact and conclusions of law. The Court issued an oral ruling on this matter on July 22, 2016 and it reserved the right to submit a written decision. This memorandum decision constitutes this Court's statement pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014 and 7052, of its reasons for granting the Defendant's motion to dismiss and denying the Defendant's motion for attorney fees, and supplements the oral ruling made on the record during the hearing.

## I. JURISDICTION, VENUE AND NOTICE

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) and (J) and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. § 1408 and 1409. Notice of the hearing for determination of the motion is found to be adequate and appropriate.

## II. FINDINGS OF FACT

---

[1] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

2

In June 2009, the Plaintiff and Defendant agreed to operate one rental property in Park City, Utah (the "Property") through the business entity named Aster Lane, LLC, a Utah LLC ("Aster Lane"). The members of Aster Lane were 7864 Astero Laneo, LLC, ("7864 Astero") which is wholly owned by Plaintiff Phillips, and Leggett Properties, LLC, ("Leggett") which is wholly owned by Defendant Long. Each member had a 50% interest.

Plaintiff Phillips was to infuse $350,000 in capital into Aster Lane through 7864 Astero. Plaintiff contributed an additional $50,000 in capital, for a total investment of $400,000. This deposit was made by wire transfer on June 18, 2009 into Aster Lane's bank account.

At about this same time, June 2009, the Property was in default to the mortgage holder for which a notice of default was recorded. The Defendant used the available cash provided by the Plaintiff to bring the Property out of default, which required an expenditure of approximately $86,704.75. Defendant drew on Plaintiff's capital contribution to pay this amount. The remaining balance of Plaintiff's capital contribution was $313,295.25. The Defendant did not keep records of how the remaining balance was spent.

About eight months later, on February 17, 2010, a second notice of default was filed and recorded. Defendant did not cure this default, nor did he inform Plaintiff that the Property was in default. The Property was sold at a trustee sale in August 2010. Five months after that, in January 2011, Defendant told Plaintiff that the property had been short sold.

The Defendant filed for bankruptcy on October 10, 2011.

### III. PROCEDURAL HISTORY

The Plaintiff filed this adversary proceeding fourteen months after the Defendant's discharge had been entered. Paragraph 1 of the complaint states, "Plaintiffs bring this matter to revoke the discharge of Long under 11 USC § 727(a)." The Plaintiff titles Counts 2, 3 and 4 of the complaint as "Revocation of Discharge" but refers to subparagraphs of § 727(a). Those three counts in the complaint recite the elements for a denial of discharge under § 727(a). The complaint concludes by alleging that "The debt Long owes Plaintiff is non-dischargeable under 11 USC § 727(a)(3) [or (4) or (5)] and an order should be entered revoking Debtor's discharge as to Plaintiff Phillip's claim."[2] It was a misnomer to speak of revoking the Defendant's discharge using those code sections. The Plaintiff relied on the elements of law for denying a discharge, and has prepared to defend factual allegations that support denying a discharge. The law and allegations recited by the Plaintiff clearly meant to deny the Defendant's discharge, and not revoke it, despite some of the language used in the complaint.

The time limit to file an adversary proceeding to deny a discharge or challenge the dischargeability of a debt is sixty days after the first date set for the meeting of creditors under § 341(a).[3] This adversary proceeding was filed outside that deadline because the Plaintiff did not have notice of Defendant's bankruptcy. The Defendant listed the Plaintiff on his schedules, but he listed the wrong address. The notice that was mailed out did not reach the Plaintiff. Plaintiffs stated that, "Plaintiffs have never had notice of this bankruptcy, and any statutorily defined limitations on the time in which an action such as this can be brought are moot in light of the

---

[2]Complaint at paragraphs 64, 70 and 78 (Feb. 11, 2013) ECF 1.

[3]*See* Bankruptcy Rules 4004 and 4007.

lack of notice."[4] The proper procedure would have been to file a motion to extend the filing deadline under Rule 4004 and Rule 4007 and formally seek the Court's permission to file this adversary proceeding, instead of assuming that lack of notice meant that the time limits don't apply.

Defendant filed a motion to dismiss for failure to state a claim upon which relief can be granted, but did not challenge the timeliness of the complaint. At the hearing on September 4, 2013, the Court, sua sponte, raised the issue about the filing deadlines in Rules 4004 and 4007, and identified it as being a jurisdictional issue.

The Defendant agreed to file a motion to dismiss the adversary proceeding for being untimely pursuant to Bankruptcy Rules 4004 and 4007. The Plaintiff's reply focused on the lack of notice of the Defendant's bankruptcy, and argued that the time limits in Rules 4004 and 4007 do not apply because Plaintiff did not receive notice of the Defendant's bankruptcy. At the hearing on the second motion to dismiss, the Court concluded that it did not have enough evidence about whether or not the Plaintiff had notice of Defendant's bankruptcy, and set an evidentiary hearing to decide if the Plaintiff had notice of Defendant's bankruptcy.

A separate procedural error was raised at the hearing on the second motion to dismiss. The Defendant's attorney questioned whether the Plaintiff should amend the complaint to bring the § 523 counts under § 523(a)(3)(B) instead of § 523(a)(2), (4) and (6), since the § 523(a)(3)(B) subparagraph specifically refers to debts that were not scheduled or listed. Defendant's attorney suggested that the Plaintiff's claims were not automatically preserved if notice was incorrect. The Court set that issue aside until the factual questions about notice had been answered.

---

[4]Complaint at paragraph 58 (Feb. 11, 2013) ECF 1.

Subsequently, the Defendant changed attorneys before that issue was settled and it was never addressed by any party. By the time the Court conducted the evidentiary hearing about notice, Defendant was represented by new attorneys, those participating in the current motion.

Based on the Plaintiff's testimony at the evidentiary hearing on October 15, 2014, the Court made the factual finding that the Plaintiff did not have notice of the Defendant's bankruptcy. The Court then discussed the law about the sixty day time limit in the Bankruptcy Rules to file an action to deny a discharge or challenge the dischargeability of a debt. That time limit can be extended for cause if a motion to extend the deadline is filed before the deadline expires.[5] The Plaintiff did not file a motion to extend the deadline before the deadline expired because he did not receive notice of the bankruptcy before the deadline expired. The transcript of the Court's ruling states:

> The Court notes that the Rules don't provide for extending the time when the creditor did not receive notice and the debtor has already received a discharge. . . . The Court has found a [Tenth Circuit] BAP [case] issued several years ago, *In re Schicke*, issued by my former colleague Glen Clark, 290 B.R. 792 (2003 10th Cir. BAP). The BAP explained, quote "When a debtor does not afford a creditor due process either by failing to timely schedule a creditor or by scheduling it incorrectly, the creditor's right to object to the dischargeability of the debt cannot be time-barred under Rule 4007(c)." This Court determines that the reasoning also applies to the discharge under 4004.

After that ruling, the adversary proceeding moved forward. It was not until the hearing on the motion for summary judgment on May 26, 2016 that Defendant's attorneys raised the timeliness issue again, this time referring to § 727(e) and the Court's subject matter jurisdiction. The Court continued the hearing on the motion for summary judgment to take up the issue of jurisdiction. The Defendant's attorneys filed a third motion to dismiss, based on lack of subject

---

[5] *See* Bankruptcy Rules 4004(b) and 4007(c).

matter jurisdiction under § 727(d) and (e). This third motion to dismiss is the matter currently before the Court.

### IV. DISCUSSION

The Court takes this opportunity to revisit and clarify its reliance on *In re Schicke*[6] when it ruled that a lack of notice tolls the deadlines in Rules 4004 and 4007. In *Schicke*, a creditor moved to reopen a case that had been closed for four years in order to bring a § 523 nondischargeability action, arguing that it did not have notice of the bankruptcy. The debtor had given notice to the creditor's attorney, but not to the creditor. The court found that under the circumstances of *Schicke*, in which the creditor had changed its name at least twice and never provided its address to the debtor, notice to the creditor's attorney was sufficient.[7] The case was not reopened, and the court did not need to extend the deadline in Rule 4007. Rule 4004 was not at issue in *Schicke* because the creditor did not intend to bring a § 727(a) denial of discharge action.

In affirming *Schicke*, the Tenth Circuit BAP quoted the Supreme Court case *Mullane v. Central Hanover Bank*, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[8]

---

[6] 290 B.R. 792.

[7] *See Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 806 (B.A.P. 10th Cir. 2003), aff'd, 97 F. App'x 249 (10th Cir. 2004).

[8] *Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 97 F.App'x 249, 251 (10th Cir. 2004) (unpublished) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950)).

This is certainly strong authority for the conclusion that a lack of notice, especially when it is due to the Defendant's conduct, should result in extending deadlines in order to accommodate due process concerns. The Court still believes that a lack of notice is good cause for extending filing deadlines that are imposed by a Bankruptcy Rule, such as Rule 4004, but there are limits as to how far such deadlines can be extended. The bench ruling at the evidentiary hearing addressed extending the deadline under Rule 4004. But Rule 4004 applies to challenging a discharge that has not yet been entered. The Defendant's discharge here had been entered fourteen months before this adversary proceeding was filed. Three counts in the Plaintiff's complaint were brought under § 727(a), but § 727(a) applies to denying a discharge that has not yet been entered. Once a discharge has been entered, the proper procedure is to bring an action to revoke a discharge under § 727(d).

This Court has not addressed the question of jurisdiction under § 727(d) and (e) at any prior hearing in this proceeding. There is a time limit of one year to bring an action to revoke a discharge, and that time limit is in the Bankruptcy Code itself, at § 727(e)(1). That one year time limit is not subject to equitable tolling. Courts have consistently refused to extend that one year time limit. In a previous case, *Miller v. Christensen*, this Court held:

> As noted by several other courts, reading the doctrine of equitable tolling into § 727(e) extinguishes the time limits within the statute, and appears to upset the decision already made by Congress because the statute itself is designed to account for the circumstances like the ones in this case. As in this case, application of § 727(d)(2) always involves discovering fraud after a debtor has received a discharge and the case has been closed. Nevertheless, the plain reading of § 727(e)(2) shows that Congress instituted these deadlines to bar precisely the type of action sought by the Trustee in this case, and there is no indication that Congress intended to toll those deadlines. Accordingly, based on the facts of this case, the Court rejects the Trustee's request to toll the deadline in § 727(e)(2) and to revoke the Debtors' discharge.

> While the Court recognizes that such a ruling may have the effect of protecting debtors that might not be "member[s] of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect," it is not the duty of this Court to rewrite the statute but to interpret it.[9]

In the *Miller v. Christensen* case, the Court was discussing § 727(e)(2), but the Court believes the same reasoning applies to the time limit in § 727(e)(1). Since Congress set the one-year deadline, the courts do not have discretion to extend it.

This is further supported by Bankruptcy Rule 9030, which states: "These rules shall not be construed to extend or limit the jurisdiction of the courts or the venue of any matters therein." In other words, as applied here, a court cannot enlarge the time limit in Rule 4004 for filing a denial of discharge action in a way that extends the court's jurisdiction beyond what Congress authorized in the statute. "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."[10]

The Plaintiff's complaint brought an action under § 727(a). That was a procedural error; because the discharge had already been entered, the complaint should have been brought under § 727(d) to revoke a discharge. That would have made the time limit clear from the outset, and resulted in dismissing this case earlier. It's unfortunate that none of the parties caught that error until three years had passed, but a challenge to subject matter jurisdiction can be raised at any time.[11] Further, Bankruptcy Rule 7012(h)(3) states that "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." The Court does not have

---

[9]*Miller v. Christensen*, 403 B.R. 733, 736-37 (Bankr. D. Utah 2009).

[10]*Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

[11]*See Kontrick v. Ryan,* 540 U.S. 443, 455 (2004).

jurisdiction to hear an adversary proceeding to revoke a discharge that is brought more than one year after the discharge was entered. The time limit in § 727(e) cannot be equitably tolled.

The Court does not wish to appear as overly technical in this analysis. But the differing subsections under § 727 are significant and the Court deems it appropriate to distinguish among those sections because each has a separate meaning and must be read as they stand. The Court must also read the Complaint as it is written and not read into it phrases and code sections that are not mentioned.

The Court extended the deadline under Rule 4004 because of concern about the Plaintiff's lack of notice of the Defendant's bankruptcy. However, that extension was at odds with other readings of §727(e) and case law.  The case law addressing how a lack of notice affects a creditor's rights to challenge a discharge more than a year after the discharge has been entered confirms that courts must defer to the time limit set by Congress. An opinion authored by Judge Martin Teel in the bankruptcy court in the District of Columbia, explained the balance between due process and this time limit in § 727(e):

> The untimeliness of the complaint is unaltered by the plaintiff's belated knowledge of the case: § 727(d)(1) itself requires that "the requesting party did not know of [the] fraud [in obtaining the discharge] until after granting of [the] discharge" and § 727(e)(1) nevertheless only allows one year after granting of the discharge to request revocation based on such late-discovered fraud. Nor does this statutory scheme violate due process: the grant of a discharge is not a suit against each individual creditor requiring service of a complaint and process and Congress can regulate the grant or denial and revocation of a discharge with whatever protections against abuse as it sees fit. One form of protection it enacted was to except certain omitted creditors from the effect of a discharge. 11 U.S.C. § 523(a)(3). Another was to make the omission a basis for denial or revocation of the discharge in certain circumstances. E.g., 11 U.S.C. § 727(a)(4)(A). So far has Congress gone. Any inability of a creditor to invoke those protections by virtue of late knowledge of the case arising from omission from the schedule of creditors is a matter which must be

Case 13-02047   Doc 108   Filed 08/05/16   Entered 08/05/16 15:05:55   Desc Main
                     Document      Page 11 of 17

left to the wisdom of Congress in dealing with legislation governing future cases, not a matter which furnishes a basis for relief from the statute's time limit here.[12]

While a bankruptcy court decision from the District of Columbia is not binding in Utah, these paragraphs are well-reasoned, and the Court finds them persuasive. Accordingly, adopting the reasoning of *In re Bulbin*,[13] this Court concludes it does not have subject matter jurisdiction to hear a revocation of discharge action that was filed more than one year after the discharge was entered. To the extent necessary, any ruling by the Court that an extension in this particular proceeding and under its facts was available pursuant to Rule 4004 is withdrawn.

## V. MOTION FOR ATTORNEY FEES AND SANCTIONS

Defendant has moved for an award of attorney fees and costs as a sanction for Plaintiff's alleged fraud upon this court. The Defendant did not give any statutory authority for such an award, but relied on two cases to support his argument that the court has the inherent authority to award attorney fees when egregious behavior is present.

In the first case cited by Defendant, *Chambers v. Nasco, Inc.*,[14] the bad faith conduct that resulted in sanctions was a series of machinations designed to frustrate a contract of sale for broadcast facilities and broadcast licenses. The actions, described as both frequent and severe, took place both within court proceedings and outside of court over a period of time, and the petitioner received and disregarded several warnings from the court about his conduct.

---

[12] *Gordon v. Bulbin (In re Bulbin)*, 122 B.R. 161, 162 (Bankr. D.D.C. 1990) (alteration in original).

[13] *Id.*

[14] 501 U.S. 32 (1991).

The Defendant also cited a Sixth Circuit case, *Scott v. Metropolitan Health Corp.*,[15] which affirmed a district court's decision to award attorney fees due to the plaintiff's egregious conduct in pursuing a factually baseless retaliation claim, intentionally concealing crucial tape recordings and filing intentionally false affidavits.

The facts in both of these cases involve several discrete actions and deliberate dishonesty accompanied by attempts to conceal the same. The party in *Chambers* also ignored court warnings that his conduct might incur a sanction.

Because these matters are so fact specific, the Court must describe the action that the Defendant alleges is egregious enough to warrant an award of sanctions. The Defendant argues that Plaintiff submitted a draft version of the Aster Lane Operating Agreement with the original complaint and asserted that it was the final version.

It is true that the Operating Agreement attached to the original complaint contained a blank address line and blank signature lines. The pagination and footers were also not consistent throughout the document. The omissions and inconsistencies were spotted quickly, and at a hearing on October 14, 2014, Plaintiff admitted in sworn testimony that the copy of the Operating Agreement submitted with the complaint was most likely a draft. The Plaintiff opined that the pages had gotten mixed up and attached to a draft due to the common practice with lengthy agreements to separate the signature page.[16] The Court finds this explanation credible.

---

[15] 234 Fed. Appx. 341 (6th Cir. 2007).

[16] Plaintiff's Combined Memorandum (1) In Support of Motion for Summary Judgment; and (2) In Opposition to Defendant's Motion for Summary Judgment and Memorandum in Support (April 27, 2016) ECF 93 at paragraph 56.

The Defendant further alleges that Plaintiff was motivated to submit a draft Operating Agreement because the final version contained a sentence that "is fatal to Plaintiff's claims,"[17] and so Plaintiff deliberately concealed it. Evaluating this charge requires the Court to delve into a few details of the parties' arguments on the merits of this action.

The final version of the Operating Agreement at Section 4.4(c) reads: "Astero's Initial Contribution. The Company shall distribute to Leggett the full amount of Astero's $350,000 Initial Contribution." Leggett is the Defendant's wholly owned LLC. Astero is the Plaintiff's wholly owned LLC. Defendant claims that this provision authorized distribution of all the funds to his LLC without stating any qualification on their use. Therefore, Defendant argues that he was not responsible for keeping records of how the money was spent, nor was he required to spend the money on the real estate investment that was at the heart of this business.

An Operating Agreement is a contract, and typical standards of contract interpretation apply to determine the meaning of its terms.[18] This Operating Agreement is an integrated contract, and so all the provisions must be considered together. "[C]ourts should construe each term of a contract to avoid rendering other terms meaningless. So courts prefer a construction that attributes a reasonable meaning to all the provisions of the agreement to one that leaves some of the provisions without function or sense."[19]

---

[17] Memorandum in Support of Defendant Robert James Long's Motion for Summary Judgment and Sanctions (March 15, 2016) ECF 83 at p. 2.

[18] See *McNeil Engineering and Land Surveying, LLC v. Bennett*, 268 P.2d 854 (Utah Ct. App. 2011) for the proposition that general principles of contract law should be applied to interpret a provision of an operating agreement.

[19] *Larry Snyder & Co. v. Miller*, 648 F.3d 1156, 1159 (10th Cir. 2011).

With or without that sentence at Section 4.4(c), both the draft and final versions of the Operating Agreement clearly contemplate a business entity that was to invest in and operate a specific rental property in Park City. Defendant's defense rests almost entirely on his interpretation of that one sentence. In contrast, Plaintiff's arguments are based on the totality of the business transaction. Without ruling on the merits of the case, but merely summarizing the arguments made, the Court determines that the Plaintiff's case against Defendant was not affected by the presence or absence of the sentence in Section 4.4(c), and therefore Plaintiff had no motivation to commit fraud by submitting an Operating Agreement that did not contain that specific sentence.

Defendant has alleged only that one action as warranting sanctions, which distinguishes this proceeding from the cases cited by Defendant in which the sanctioned parties committed multiple egregious actions. The Court determines that the Plaintiff submitted a draft version of the Operating Agreement by mistake. The error was corrected fairly early in the case, and other than lengthening the Defendant's briefs with arguments about awarding attorney fees, it has had no impact on this proceeding. The Court never needed to warn Plaintiff about any of his conduct, and so Plaintiff has not disregarded any Court warnings. This adversary proceeding is distinguishable in all points from the cases cited by Defendant in pursuit of attorney fees and sanctions against Plaintiff. Accordingly, the request for attorney fees and costs is denied. Each party shall bear its own attorney fees and costs.

## VI. CONCLUSIONS OF LAW

The Court determines that the Plaintiff made a procedural error in bringing an action to revoke a discharge under § 727(a). An action to revoke a discharge is properly brought under §

727(d). The one-year time limit on a revocation of discharge action set forth in § 727(e) therefore applies to this adversary proceeding.

Count Two of the complaint under § 727(a)(3) should be dismissed as untimely.

Count Three of the complaint under § 727(a)(4) should be dismissed as untimely.

Count Four of the complaint under § 727(a)(5) should be dismissed as untimely.

This leaves five other counts in the complaint. Counts Five, Six and Seven were brought under § 523(a), and were withdrawn by the Plaintiff on April 27, 2016 in Plaintiffs' Combined Memorandum (1) In Support of Motion for Summary Judgment and (2) In Opposition to Defendant's Motion for Summary Judgment and Memorandum in Support, filed at docket 93.

Plaintiff has prevailed on Count One, which was to determine that the bankruptcy was improperly noticed under § 342(c)(2)(A). That is memorialized in the order at docket 48.

This leaves only Count Eight outstanding. Count Eight is titled "Declaratory Judgment." The Plaintiffs request a declaratory judgment from this Court stating that Plaintiffs are not enjoined from pursuing Leggett Properties, LLC and Aster Lane, LLC in a court of competent jurisdiction. That sounds like a request for relief from the automatic stay, which is brought under 11 USC § 362, and generally not as part of an adversary proceeding. However, Leggett Properties, LLC has apparently never filed bankruptcy, so no relief from the automatic stay is necessary. Aster Lane, LLC was briefly a debtor, but its case was dismissed on October 21, 2010. It is unnecessary for this Court in a chapter 7 case to give permission for a party to pursue a non-debtor in another court on a non-consumer type of obligation. The rest of Count Eight sets forth Plaintiff's wishes to obtain a final accounting and dissolve those two LLCs. These are not core

proceedings under 28 USC § 157. The Court does not have jurisdiction over non-debtor business entities. Accordingly, Count Eight should also be dismissed for lack of jurisdiction.

The Defendant's motion for attorney fees and costs should be denied.

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **Memorandum Decision** will be effected through the Bankruptcy Noticing Center to the following parties:

Jeffrey Phillips
3101 North Central Avenue
Suite 1500
Phoenix, AZ 85012

Trey A.R. Dayes, III
Phillips Dayes
3101 North Central Avenue
Suite 1500
Phoenix, AZ 85012

Robert James Long
5088 So. Wander Ln.
Salt Lake City, UT 84117
SSN / ITIN: 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

James A Sorenson
Matthew Lewis
Ray Quinney & Nebeker P.C.
P.O. Box 45385
Salt Lake City, UT 84145